1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSEPH DANG d/b/a LAW OFFICE OF
JOSEPH DANG, an individual,

                                        Plaintiff,

v.

DAVID PONTIER, an individual;
TEOCO Corporation Group Benefit Plan,
a self-funded group health plan; TEOCO
Corporation, a Delaware Corporation;
UMR Inc., a Delaware Corporation; Glenn
C. Nusbaum, an individual; Paul E. Kim,
MD Inc., A California corporation; Kevin
Yoo, an individual,

                                        Defendants.

Case No.:  19CV1519-GPC(AHG)

**ORDER GRANTING IN PART AND
DENYING IN PART
COUNTERDEFENDANT DANG'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
COUNTERPLAINTIFF PONTIER'S
AMENDED MOTION FOR
SUMMARY JUDGMENT**

**[Dkt. Nos. 74, 118.]**

        Before the Court is Counterdefendant Joseph Dang's ("Dang") motion for

summary judgment on the counterclaims, and Counterplaintiff David Pontier's

("Pontier") amended motion for summary judgment on certain claims. (Dkt. Nos. 74,

118.)  Oppositions and replies were filed.[1]  (Dkt. Nos. 82, 101, 141, 146.)  Based on the

_____

[1] Because Pontier is proceeding pro se, he uses the U.S. postal service to submit his filings.  Therefore,
on Dang's motion, Pontier's opposition was filed after Dang's reply was filed.

19CV1519-GPC(AHG)

reasoning below, the Court GRANTS in part and DENIES in part Dang's motion for summary judgment and DENIES Pontier's amended motion for summary judgment.

### Procedural Background

On August 13, 2019, Plaintiff Joseph Dang d/b/a/ Law Office of Joseph Dang ("Dang") filed a complaint in interpleader, pursuant to 28 U.S.C. § 1335, against Defendants David Pontier ("Pontier"), TEOCO Corporation Group Benefit Plan, TEOCO Corporation as Plan Sponsor, UMR Inc., Glenn Nusbaum, D.C. ("Nusbaum"), Paul E. Kim, M.D. Inc. ("Kim"), and Kevin Yoo, M.D ("Yoo").[2]  (Dkt. No. 1, Compl.)  Plaintiff was in possession of $32,764.62 in the name of David Pontier, a former client, representing funds remaining from a personal injury settlement.  (*Id.* ¶¶ 12, 13.)  All Defendants made conflicting demands upon Plaintiff for the funds.  (*Id.* ¶¶ 15-20.)  On August 22, 2019, an order for interpleader deposit was filed and $32,764.62 was deposited into the Court's Interest-Bearing Registry Account and invested in the Court Registry Investment System.  (Dkt. No. 4.)  On April 28, 2020, Defendants TEOCO Corporation Group Benefit Plan, TEOCO Corporation, and UMR Inc. were dismissed by way of a joint motion to dismiss.  (Dkt. Nos. 60, 63.)

On January 15, 2020, Pontier, proceeding pro se, filed a counterclaim alleging causes of action for conversion, fraud, breach of contract, and legal malpractice against Dang as well as claims of medical fraud and medical malpractice against Dang, Kim, Nusbaum, and Yoo.  (Dkt. No. 9.)  On February 7, 2002, Pontier filed a supplemental counterclaim alleging violations of the Federal Fair Debt Collection Practices Act and/or California's Rosenthal Fair Debt Collection Practices Act against Dang, Kim, Yoo, and Nusbaum and another count of fraud against Dang.  (Dkt. No. 28.)  Dang filed an answer to the counterclaim and the supplemental counterclaim.  (Dkt. Nos. 27, 36.)  Kim, Yoo and Nusbaum did not respond.

---

[2] The Court notes that on August 9, 2018, Dang filed an interpleader action in this Court but voluntary dismissed it on June 12, 2019.  (Case No. 18cv1869-LAB(BGS), Dkt. Nos. 1, 7.)

On February 28, 2020, the Court denied Pontier's motion to dismiss the interpleader for failure to serve the complaint and summons. (Dkt. No. 39.) On March 10, 2020, Pontier filed his answer to the interpleader complaint. (Dkt. No. 46.) Defendants Nusbaum, Kim and Yoo did not file answers to the interpleader complaint. On June 25, 2020, entry of default was entered against Nusbaum, Kim and Yoo. (Dkt. No. 78.) On July 22, 2020, the Court granted Pontier's motion for default judgment on the interpleader complaint as to Defendants Nusbaum, Kim and Yoo but denied Pontier's request for damages as premature. (Dkt. No. 98.)

On May 29, 2020, the Court denied Pontier's motion for leave to amend his counterclaim seeking to add JP Morgan Chase Bank, Inc. ("JP Morgan Chase"), Farmers Insurance, Inc. ("Farmers") and GEICO Insurance, Inc. ("GEICO") as defendants. (Dkt. No. 70.) Because Pontier failed to provide any factual support or allege any proposed causes of action against these proposed defendants, the Court concluded that leave to amend would be futile. (*Id.*)

On July 6, 2020, Pontier filed a motion for leave to file an amended counterclaim based upon new evidence as well as motions for joinder of J.P. Morgan Chase, GEICO and Farmers under Federal Rule of Civil Procedure ("Rule") 19(a). (Dkt. Nos. 89, 91, 93, 95.) On October 8, 2020, the Court granted Pontier's motion for leave to file an amended counterclaim by October 23, 2020. (Dkt. No. 126 at 7.) It concluded "under Rule 15(a) and Rule 20, the Court GRANTS Pontier's motions for reconsideration and GRANTS him leave to file an amended counterclaim to add JP Morgan Chase, GEICO and Farmers as defendants in the counterclaim." (*Id.*) On October 29, 2020, Pontier filed a Notice to Withdraw Request to Join Parties indicating he did not seek to add the J.P. Morgan Chase, GEICO and Farmers as defendants in the counterclaim as he decided to seek relief against them in another court. (Dkt. No. 132.) Therefore, the counterclaim and supplemental counterclaim are the operative claims.

/ / /

/ / /

**Factual Background**

Pontier, a Las Vegas resident, retained Dang on April 10, 2012 after he was injured in an automobile accident in San Diego and entered into a contingency fee agreement. (Dkt. No. 118-3, Dang Decl. ¶ 2; Dkt. No. 74, D's Am. MSJ, Ex. G at 30-31[3]; *see also* Dkt. No. 118-4, Ex. 13 at 41.)  After months of treatment, on April 3, 2014, Dang filed a complaint entitled *Pontier v. Daniels*, Case No. 37-2014-00006757.  (Dkt. No. 118-3, Dang Decl. ¶ 2.)  On March 11, 2015, Pontier had surgery.  (*Id.*)  Around the same time, defense counsel in the *Daniels* case advised Dang that the his client's policy limit was $50,000.  (*Id.*)  Dang then investigated and took the defendant's deposition, reviewed his telephone records surrounding the time of the accident, ran an asset search, reviewed his prior mortgage statement which showed he had no equity in the home and had the defendant Daniels sign a declaration confirming he had no other insurance or assets.  (*Id.* ¶ 3.)  With Pontier's consent, the lawsuit settled for the $50,000 policy limit.  (*Id.* ¶ 4.)  On November 12, 2015, Pontier signed a release of all claims and rights in the accident. (Dkt. No. 118-4, Ex. 13.)  Then Dang made a demand for Uninsured Motorist ("UIM") arbitration in March 2016 which settled for $50,000 in August 2016.  (Dkt. No. 118-3, Dang Decl. ¶ 4.)

According the contingency fee agreement, the attorney fee was to be determined by the following:

> A. 25%: If the claim is settled prior to filing a lawsuit; or setting for arbitration under a contract requiring mandatory arbitration such as a motor vehicle underinsured motorist policy.
> B. 33%: After the claim is filed as a lawsuit or set for arbitration under a contract requiring mandatory arbitration such as a motor vehicle underinsured motorist policy.
> C. 40%: If the claim is tried to a judge or jury. If no recovery is made on behalf of the Client, no fee shall be due and owing to the Attorney. However, Client shall pay Attorney the unpaid expenses incurred if any are outstanding.

---

[3] Page numbers are based on the CM/ECF pagination.

(Dkt. No. 74, D's Am. MSJ, Ex. G at 31.)  The agreement further provides the following,

> BASIS OF FEE: The contingent fee, payable as set forth in the fee provision of this contract, shall be based on the total amount recovered (gross) exclusive of any costs incurred in prosecuting the claim, unless some other formula for computing the claim is agreed to in writing by the Attorney and Client. In motor vehicle cases, the Attorney will take no fee for services rendered in the settlement of claims for property damages to Client's motor vehicle, unless a bad faith claim is made against the insurer.

> PAYMENT OF UNPAID EXPENSES AT THE CONCLUSION OF THE CASE: Any outstanding expenses at the time of final resolution will be deducted from the amount recovered after deduction of the applicable Attorney's fees. The sum of $250.00 will be withheld at the time of initial disbursement to cover any expenses not yet billed (i.e., messenger fees, long distance telephone charges, etc.). The remaining balance will be forwarded to the Client within six weeks of the initial disbursement.

> PAYMENT OF UNPAID MEDICAL CREDITORS: If, at the time of resolution, there are unpaid balances due to any doctor, hospital, expert or other medical creditor, personal injury protection/ medical pay, or car insurance carrier for Client's care and treatment, those expenses will be deducted from the amount recovered after deduction of the applicable Attorney's fees and costs, and will be paid by Attorney directly to the unpaid medical creditor.

(*Id.* at 30.)

Defendant Nusbaum provided chiropractor medical care under a lien on Pontier's personal injury proceeds in the amount of $5,710.00 but on November 6, 2017 agreed to accept $2,500.  (Dkt. No. 118-3, Dang Decl. ¶ 5; Dkt. No. 118-4, Ex. 1.)  Defendant Kim also provided medical care under a lien on Pontier's personal injury proceeds and asserted more than $21,547.00 but agreed to accept $14,695.89 in settlement on November 6, 2017.  (Dkt. No. 118-3, Dang Decl. ¶ 5; Dkt. No. 118-4, Exs. 2-3.) Defendant Yoo, a neurosurgeon, provided medical care under a lien on Pontier's personal

injury proceeds and asserted a right to $766.62 but agreed to accept a $500 settlement on November 30, 2017.  (Dkt. No. 118-3, Dang Decl. ¶ 5; Dkt. No. 118-4, Exs. 4-5.)

Defendant TEOCO Corporation Group Benefit Plan is a self-funded plan governed by ERISA and Defendant TEOCO Corporation is the plan sponsor and plan administrator (collectively "TEOCO").  (Dkt. No. 118-3, Dang Decl. ¶ 6.)  TEOCO employed Defendant UMR as third-party administrator and asserted a right to $4,741.05 and agreed to a $3,500 settlement on November 6, 2017.  (Dkt. No. 118-3, Dang Decl. ¶ 6; Dkt. No. 118-4, Ex. 8.)  TEOCO later employed Carefirst as third-party administrator and TEOCO asserted a reimbursement right of $85,420.22 against Pontier and agreed to accept $35,000 as a settlement on October 21, 2015.  (Dkt. No. 118-3, Dang Decl. ¶ 7; Dkt. No. 118-4, Exs. 6, 7.)

Per the contingency fee agreement, Dang made following disbursements:

| Date | Description | Disbursements | Receipts | Balance |
|---|---|---|---|---|
| 11/23/2015 | 3rd Party Settlement [Farmers] | | $50,000.00 | $50,000.00 |
| 11/24/2015 | Attorney Fee | $16,500.00 | | $33,500.00 |
| 3/14/2016 | Virgie Demanski Medical Exam | $297.25 | | $33,202.75 |
| 8/12/2016 | Underinsured Motorist Settlement [GEICO] | | $50,000.00 | $83,202.75 |
| 11/16/2016 | Attorney Fee ($16,500 reduced to $5,000) | $5,000.00 | | $78,202.75 |

| Date | Description | Disbursements | Receipts | Balance |
|---|---|---|---|---|
| 10/22/2018 | TEOCO/Carefirst/Phia Group | $35,000.00 | | $43,202.75 |
| 10/4/2109 | Federal Interpleader Deposit | $32,764.62 | | $10,438.13 |
| 10/24/2019 | To Client | $10,438.13 | | $0.00 |

(Dkt. No. 118-3, Dang Decl. ¶ 9.)

On January 25, 2016, Pontier wrote Dang a letter stating he agreed to settle his litigation against Daniels for $50,000 and an additional $50,000 from his uninsured motorist insurance but had not heard from Dang in three months, had not received the settlement funds and requested an update concerning the disbursement of settlement

funds.  (Dkt. No. 9, Counterclaim at 4.)  On March 18, 2016, Pontier wrote a follow up letter to Dang about the status of the $50,000 Farmers settlement fund.  (*Id.* at 5.)  On August 19, 2016, Pontier wrote to Dang with the subject of the letter "Re: Where is my money!!!!!!".  (Dkt. No. 9, Counterclaim at 6-7.)  The letter stated that Dang promised that if Pontier signed the Farmers settlement, he would receive between $28,000 and $30,000 within 30 days which was almost a year ago and Pontier has received nothing.  (*Id.*)  He also stated that Dang promised to file the GEICO claim free of charge to help him pay for his surgery and instead Dang was keeping the $50,000 for himself.  (*Id.*)  Pontier demanded the return of both the $50,000 settlement funds from Farmers and $50,000 funds from GEICO.  (*Id.*)

On July 1, 2016, Dang sent an email to Pontier concerning receipt of his letter seeking to file complaints against the doctors.  (Dkt. No. 118-4, Ex. 14.)  In another email dated January 25, 2017 from Dang to Pontier inquiring whether he needed assistance with writing the letters to the doctors to which Dang responded "maybe you could help me with it" (*id.*, Ex. 15).

On September 6, 2017, Pontier terminated the attorney-client relationship for failing to distribute the settlement funds.  (Dkt. No. 74, Pontier Decl. ¶ 22 at 43.)  On October 31, 2017 and again on November 6, 2017, Dang sent Pontier an email providing him an update on the medical liens.  (Dkt. No. 118-4, Ex. 17.)  On December 6, 2017, Pontier wrote Dang a letter claiming his dissatisfaction with Dang about his failure to respond to Phia Group's attempt to contact Dang in 2016 and demanded the $50,000 GEICO settlement because he claimed that it was not part of the settlement as it was from his uninsured benefit from his private insurance policy.  (*Id.,* Ex. 23.)  On December 27, 2017, Dang responded to Pontier's letter.  (*Id.*, Ex. 20.)  He apologized that Pontier had been unable to contact him because he had a new address in August 2016 explaining that his emails starting August 8, 2016 had in the signature "PLEASE NOTE OUR NEW ADDRESS."  (*Id.*)  Dang also provided a detailed response why he did not recommend trial, his efforts at negotiating the medical liens with Phia Group and other providers, why

19CV1519-GPC(AHG)

he believed the $50,000 GEICO was part of the entire claim, but offered to refund his fee for GEICO's settlement amount and why the $50,000 GEICO settlement could not yet be forwarded to Pontier because it reduced the amount below what was owed to the doctors. (*Id.*)  On February 14, 2018, Pontier wrote a letter to Dang requesting the accounting of both checks and disputing Dang's claim that the $50,000 GEICO check was part of the settlement because it came out of his personal insurance policy that was paid for in Nevada and requested that the $50,000 be forwarded to him.  (*Id.*, Ex. 9.)  He also complained that Dang failed to provide him with written notice that his office was moving.  (*Id.*)  Because Dang did not hear a response from Pontier concerning his emails sent on October 31, 2017 and November 6, 2017, and was unable to contact Pontier by phone, Dang resent the email in a letter on April 4, 2018.  (*Id.*)  Because Pontier's claims created a conflict, Dang filed the interpleader complaint due to the contested funds at issue.  (Dkt. No. 118-3, Dang Decl. ¶ 10.)

Pontier declares that the contingency fee agreement provided that "[t]he remaining balance will be forwarded to the client within six weeks of the initial disbursement." (Dkt. No. 74, Pontier Decl. ¶ 3.)  Pontier states that Dang explained this provision that he would distribute all funds from any settlement as soon as he received the funds and that the six weeks was the latest it would be distributed.  (*Id.* ¶ 4.)  Dang explained that the six weeks was for the client's benefit and this assured that the attorney would handle the matter with due diligence as required by the California bar.  (*Id.* ¶¶ 5, 6.)  Pontier declares that on November 20, 2015, Dang deposited the Farmers check to his account, Law Office of Joseph Dang IOLTA 96714405, and Pontier had never seen nor signed the check before it was deposited.  (*Id.* ¶¶ 8, 9.)  He claims that had Dang explained that he would deposit the check and then withdraw $16,500 for himself and not distribute the remainder to him, he would have rejected the settlement and proceeded to trial.  (*Id.* ¶ 10.)  Around December 1, 2015, he spoke with Dang about the check deposit and Dang said that because the check had his name on it, it could be legally negotiated with his endorsement alone.  (*Id.* ¶11.)  Dang told him that the $50,000 Farmers check would be

held in escrow and there would be no distributions until the GEICO check was received and then all funds would be immediately distributed.  (*Id.* ¶¶ 12, 14.)  Around August 12, 2016, Dang deposited the $50,000 GEICO check to Chase Bank into his bank account. (*Id.* ¶ 15.)  Around August 12, 2016, Dang stopped responding to Pontier.  (*Id.* ¶ 17.) Around September 15, 2016, Pontier's domestic partner received a letter from TEOCO stating that Dang had stopped responding to their attempts to contact him about the settlement.  (*Id.* ¶18.)  Prior to termination on September 6, 2017, Dang never informed Pontier that he planned to distribute the settlement funds to Defendants Kim, Yoo or Nusbaum.  (*Id.* ¶20.)  Dang refused or ignored Pontier's request for the $100,000 to be distributed.  (*Id.* ¶ 21.)  Prior to September 6, 2017, there were no claims for medical services from Kim, Yoo or Nusbaum as they would have expired under the statute of limitations.  (*Id.* ¶ 24.)  Six weeks after the termination of services, Dang refused to return any of the $100,000 from the client fund falsely stating he was holding the funds for the benefit of Kim, Yoo and Nusbaum.  (*Id.* ¶ 25.)

### Discussion

In his motion for summary judgment, Dang generally claims that the one-year statute of limitations under California Code of Civil Procedure section 340.6 ("section 340.6") bars all counterclaims[4] and on the merits on certain claims for failure to provide evidence to support the claims.  (Dkt. No. 118.)  Pontier also moves for summary judgment.  (Dkt. No. 74.)  First, on the interpleader complaint, he argues he is entitled to the interpleader funds as the other remaining defendants have defaulted or have been dismissed.  (Dkt. No. 74 at 4-5.)  The Court notes that default judgment has been issued against the remaining defendants and the Court recently granted Dang's motion for interpleader discharge and disbursement of the interpleaders funds to Pontier.  (Dkt. Nos. 98, 152.)  Therefore, Plaintiff's motion for summary judgment on the interpleader

---

[4] While Dang moves for summary judgment on all nine counterclaims, the Court notes that the counterclaim has eight causes of action.

19CV1519-GPC(AHG)

complaint is DENIED as moot.  Second, Pontier moves for summary judgment on his conversion counterclaim.  (Dkt. No. 74 at 4-13.)  On that claim, the Court notes that the counterclaim alleges that as of October 15, 2015, Pontier was entitled to possession of the $50,000 settlement check from Farmers Insurance and a $50,000 GEICO check as of August 16, 2016.  (Dkt. No. 9, Counterclaim at 1-2.)  Around October 16, 2015, and August 16, 2016, respectively Dang took the two $50,000 checks from Pontier's possession and converted it to Dang's own use.  (*Id.*)  Around October 17, 2015 and August 17, 2016, Pontier demanded the immediate return of two $50,000 checks but Dang refused and continues to refuse to return the property.  (*Id.; id.,* Ex. B.)  However, on summary judgment, Pontier raises a new factual theory for the conversion claim that is not alleged in his counterclaim.  On summary judgment, Pontier, for the first time, argues that Dang converted the $50,000 check from Farmers and GEICO by failing to comply with the California Uniform Commercial Code that requires endorsements of all co-payees prior to depositing the checks into a bank account.  (Dkt. No. 74 at 4-9.)  These new factual allegations are not presented in the counterclaim.

The Ninth Circuit has stated that "[t]he necessary factual averments are required with respect to each material element of the underlying legal theory . . . .Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Products, Inc. v. Southwall Tech., Inc*., 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind–Waldock & Co*., 922 F.2d 20, 24 (1st Cir.1990)).  Therefore, because the UCC allegations are not alleged in the counterclaim, the Court will not consider these new arguments raised for the first time on summary judgment.  *See id.*  Accordingly, the Court DENIES Pontier's amended motion for summary judgment on the conversion claim as unsupported.  Finally, Pontier moves for summary judgment on the breach of

contract claim based on allegations in the counterclaim and the Court will consider it in the analysis below.[5]  (Dkt. No. 74 at 10-13.)

## A.      Legal Standard on Motion for Summary Judgment

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, in order to "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).   A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp.,* 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions

---

[5] The Court notes that Pontier has failed to file a separate statement of undisputed material facts with his motion for summary judgment that he contends are undisputed as required by the undersigned chambers rules.  Dang also noted that Pontier failed to file a response to his separate statement of material facts.  Nonetheless, because Pontier is proceeding *pro se* and Dang does not dispute the evidence attached to Pontier's counterclaims and briefs, the Court relies on documents submitted in support of Dang's separate statement of undisputed material facts as well as documents attached to Pontier's counterclaims and briefs.

1  on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,*

2  477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an

3  element of its case, the moving party is entitled to judgment as a matter of law.  *Id.* at

4  325.  "Where the record taken as a whole could not lead a rational trier of fact to find for

5  the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

6  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In making this determination, the court

7  must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana*

8  *v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility

9  determinations, weighing of evidence, or drawing of legitimate inferences from the facts;

10  these functions are for the trier of fact.  *Anderson*, 477 U.S. at 255.

11  **B.    Statute of Limitations**

12         Dang argues all counterclaims fail as they are barred by the one-year statue of

13  limitations against attorneys pursuant to California Code of Civil Procedure section 340.6

14  but also argues that that the fraud causes of action are barred by the three-year statute of

15  limitations for fraud.  (Dkt. No. 118-1 at 12-19; Dkt. No. 82.)  He summarily explains

16  that the statute of limitations began running on September 6, 2017 when Pontier

17  terminated Dang as his attorney and because the counterclaim was filed on January 15,

18  2020, all claims are barred.  (Dkt. No. 118-1 at 7.)  However, on the conversion claims,

19  Dang argues that the statute of limitations began in 2015 or 2016.  (Dkt. No. 118-1 at 15.)

20  Pontier responds that the four-year statute of limitations for breach of contract under

21  California Code of Civil Procedure 337 applies to all claims because they arise out of the

22  contingency fee agreement.  (Dkt. No. 146.)  He argues his claims are timely because the

23  last action of disbursement on Dang's account ledger occurred on October 24, 2019.[6]  (*Id.*

24

25

26  [6] Pontier also argues that the statute of limitations should be tolled because Dang filed successive
interpleader complaints against Pontier.  (Dkt. No. 146 at 7-8.)  However, the statute of limitation on the
27  counterclaim is distinct from any statute of limitations issues concerning the interpleader complaint.
Pontier provides no legal authority that tolling on his counterclaim should be based on the filing of an
28  interpleader complaint.  Pontier could have filed a complaint against Dang for the allegations contained
in the counterclaims independent of the interpleader complaint.

19CV1519-GPC(AHG)

at 6.)  Finally, he argues that the statute of limitations should be tolled based on Dang concealing material facts that to support his claims.  (*Id.* at 13-21.)

Section 340.6(a) provides "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.  Cal. Civ. Proc. Code § 340.6(a).

In *Lee v. Hanley*, 61 Cal. 4th 1225 (2015), the California Supreme Court explained that section 340.6 applies to claims "whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services." *Id.* at 1236-37.  A "professional obligation" is "an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the State Bar Rules of Professional Conduct." *Id.* at 1237.  Professional obligations include legal and nonlegal professional services "governed by an attorney's professional obligations" such as "accounting, bookkeeping, and holding property in trust." *Id.* (rejecting argument that professional services include only claims for legal malpractice); *see also Austin v. Medicis*, 21 Cal. App. 5th 577, 586 (2018) ("the statute's reach extends beyond legal malpractice to the performance of services that do not require a law license.").

But section 340.6 does not apply to an attorney's alleged misconduct "merely because it occurs during the period of legal representation or because the representation brought the parties together and thus provided the attorney the opportunity to engage in the misconduct." *Lee*, 61 Cal. 4th at 1238.  The court in *Lee* explained that the ultimate "question is not simply whether a claim alleges misconduct that entails the violation of a professional obligation.  Rather, the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as

opposed to some generally applicable nonprofessional obligation." *Id.* Therefore, if a cause of action may be proven by some other means and does not hinge on proof that the attorney violated a professional obligation, then section 340.6 does not apply. *Id.* at 1236 (citations omitted) (stating that section 340.6(a) applies regardless of whether the plaintiff has alleged the claim as professional negligence, breach of contract, breach of fiduciary duty, or even malicious prosecution).

The plaintiff in *Lee* was a client who deposited $110,000 with the defendant attorney as an advance on the attorney fees and costs to be incurred in the client's civil litigation matter. *Id.* at 1230. After the litigation settled, the attorney sent a letter and invoice explaining the client had a credit balance of approximately $46,000. *Id.* The client demanded the attorney return the credit balance, but the attorney refused. *Id.* More than a year later, the client sued the attorney to recover the credit balance and the attorney demurred, arguing section 340.6(a)'s one-year limitations period barred the client's claim. *Id.* The trial court agreed and sustained the attorney's demurrer without leave to amend. *Id.* at 1231. The court of appeal reversed and the Supreme Court, agreeing with the reversal held that on a demurrer, it must assume the truth of the allegations in the complaint and based on the allegations it could be construed that the attorney was liable for conversion for simply refusing to return an identifiable sum; therefore, her claims would not necessarily depend on proof the attorney violated a professional obligation in the course of providing professional services or the allegations could be construed as the attorney violating certain professional obligations such as a duty to refund unearned fees at the termination of the representation. *Id.* at 1240. The court further explained if the facts show that the attorney kept her money under an unconscionable fee agreement in violation of California Rule Professional Conduct Rule 4-200, or did not properly preserve client funds, Rule 4-100, her claim may be barred. *Id.*

Section 340.6 contains two separate and alternate limitations period: "one year after actual or constructive discovery, or four years after occurrence (the date of the wrongful act of omission), whichever occurs first." *Nguyen v. Ford*, 49 Cal. App. 5th 1,

12 (2020) (internal quotations and citations omitted).  Section 340.6 also sets forth several tolling provisions and include, *inter alia*, the tolling of the statute when the "attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred", Cal. Code Civ. Proc. § 340.6(a)(2), and when the "attorney willfully conceals the facts constituting the wrongful act or omission when those facts are known to the attorney, except that this subdivision shall toll only the four-year limitation", Cal. Code Civ. Proc. § 340.6(a)(3).

## C.    First Cause of Action - Conversion

Dang argues that the conversion claims are time barred by section 340.6 because they are "governed by an attorney's professional obligation."  (Dkt. No. 118-1 at 15-17.)  Moreover, even if the three-year statute of limitations for conversion applied, they are still time barred as Pontier knew of the alleged conversion in 2015 and 2016.  (*Id.*)  Finally, the claims fail on their merits.  (*Id.*)  Pontier generally responds that the four-year statute of limitations for breach of contract applies on all his claims as they arise out of the contingency fee agreement.  (Dkt. No. 146 at 3-6.)  Pontier alternatively argues that the statute of limitations should be tolled under section 340.6(a)(3) where an "attorney willfully conceals the facts constituting the wrongful act or omission when those facts are known to the attorney, except that this subdivision shall toll only the four-year limitation."  *See* Cal. Civ. Proc. Code § 340.6(a)(3).

Pontier alleges he was entitled to possession of the $50,000 settlement check from Farmers as of October 15, 2015 and a $50,000 GEICO check as of August 16, 2016.  (Dkt. No. 9, Counterclaim at 1-2.)  Around October 16, 2015, and August 16, 2016, respectively, Dang took the two $50,000 checks and converted it to his own use.  (*Id.*)  Around October 17, 2015 and August 17, 2016, Pontier demanded the immediate return of two $50,000 checks but Dang refused and continues to refuse to return the property.  (*Id.; id.*, Ex. B.)  As such, Pontier was unable to pay for necessary medical care for spinal injuries which led to pain, suffering, and permanent disability and unable to pay medical bills which led to his credit being harmed and seeks $12 million in damages.  (*Id.* at 2.)

Attached to the counterclaim are letters Pontier mailed to Dang dated January 25, 2016, March 18, 2016 and August 19, 2016 where Dang seeks information about the status of the $50,000 check, and ultimately, demanding the return of both settlement checks.  (*Id.* at 2-7.)

Here, the Court concludes that the conversion claims arise from Dang's alleged misconduct in carrying out his legal services as Pontier's attorney in allocating the settlement funds in his personal injury case.  *See Foxen v. Carpenter*, 6 Cal. App. 5th 284, 292-3 (2016) (contract claims against attorneys for misconduct in allocating settlement funds, "either because they incorrectly calculated the litigation costs, or because they breached their fiduciary duties to her by intentionally manipulating those charges in order to recover more money than that to which they were entitled" were subject to section 340.6 because "plaintiff will not be able to establish her contract claims against defendants without demonstrating they breached professional duties owed to her, or nonlegal services closely associated with the performance of their professional duties as lawyers").  Though not explicitly stated by Dang, the role of receiving, and distributing the settlement funds in his role as Pontier's attorney are governed by the California Rules of Professional Conduct.  For example, "[a] lawyer shall: (1) promptly notify a client or other person of the receipt of funds, securities, or other property in which the lawyer knows or reasonably should know the client or other person has an interest, Cal. Rules Prof. Conduct, Rule 1.15(d)(1), and "(7) promptly distribute, as requested by the client or other person, any undisputed funds or property in the possession of the lawyer or law firm that the client or other person is entitled to receive.  Cal. Rules Prof. Conduct, Rule 1.15(d)(7).  The Comment of Rule 1.15 further provides, "[w]hether a lawyer owes a contractual, statutory or other legal duty under paragraph (a) to hold funds on behalf of a person other than a client in situations where client funds are subject to a third party lien will depend on the relationship between the lawyer and the third-party, whether the lawyer has assumed a contractual obligation to the third person and whether the lawyer has an independent obligation to honor the lien under a statute or

other law.  In certain circumstances, a lawyer may be civilly liable when the lawyer has notice of a lien and disburses funds in contravention of the lien." Cal. Rules Prof. Conduct, Rule 1.15 (comment).  "However, if a client or other person disputes the lawyer or law firm's right to receive a portion of trust funds, the disputed portion shall not be withdrawn until the dispute is finally resolved."  Cal. Rules Prof. Conduct, Rule 1.15(c)(2).  Here, success on Pontier's claim will require proof that Dang violated a professional obligation.  As such, the one-year statute of limitation applies under section 340.6.

While not raised by either party, Court recognizes that section 340.6 sets forth a tolling of the limitations period when an "attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." Cal. Civ. Proc. Code § 340.6(a)(2).  California's continuing representation rule provides that a claim for legal malpractice is tolled so long as "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." Cal. Civ. Proc. Code § 340.6(a)(2).  "The inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated."  *Foxborough v. Van Atta*, 26 Cal. App. 4th 217, 229 (1994).  "An attorney's representation of a client ordinarily ends when the client discharges the attorney or consents to a withdrawal, the court consents to the attorney's withdrawal, or upon completion of the tasks for which the client retained the attorney."  *Gonzalez v. Kalu*, 140 Cal. App. 4th 21, 28 (2006) (citation omitted).

While the statute and its legislative history do not address the question of when an attorney-client relationship terminates, courts have developed a number of principles related to this inquiry. *Nguyen*, 49 Cal. App. 5th at 12.  "We hold that, so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative."  *Gurkewitz v. Haberman*, 137 Cal. App. 3d 328, 333 (1982).  In *Gurkewitz*, after the trial court dismissed the case for lack of prosecution and the court of appeal affirmed, the costs on appeal were still at issue.  The

court found that the plaintiff discovered the alleged wrongful omission of defendants on October 31, 1977 when they were informed that the case was dismissed, *id.* at 332, but tolled the one year statute of limitation until March 23, 1979 because the attorney negotiated with opposing counsel and effected a reduction in the bill for his client and that contact with opposing counsel amounted to representation. *Id.* at 334.

Similarly, in this case, Pontier terminated the attorney-client relationship with Dang on September 6, 2017.  However, Dang continued to represent Pontier by negotiating the medical liens during November 2018, (Dkt. No. 118-4, Exs. 1, 3, 5, 8), and communicating updates to Pontier about the medical liens in late 2017 and early 2018.  (*Id.*, Exs. 17, 18, 20.)  Therefore, the continuous representation tolling provision applies; however, there is an issue of fact as to when the attorney client relationship terminated for purposes of tolling.  While the last communication in the record shows a letter written by Dang on April 4, 2018, (Dkt. No. 118-4, Ex. 18), the last disbursement made on the account ledger shows a disbursement of funds to Pontier on October 24, 2019.  (Dkt. No. 118-3, Dang Decl. ¶ 9.)  If the latter event terminates the relationship, then the conversion claims would be timely.  Therefore, because there are issues of material fact as to the statute of limitations, the Court DENIES Dang's motion for summary judgment as time barred.  *See Nguyen*, 49 Cal. App. 5th at 15 (determining application of section 340.6 is generally a question of fact).

Pontier also argues that the statute of limitations should be tolled under section 340.6(a)(3) because Dang willfully concealed facts constituting the wrongful act of disbursing $21,500 to himself for attorney fees.  (Dkt. No. 146 at 13-19 (citing Cal. Code Civ. Proc. Code § 340.6(a)(3).)

Pontier makes a number of claims that Dang fraudulently concealed facts without providing legal or factual support, but the Court addresses the relevant ones.  (Dkt. No. 146 at 13-19.)  He claims Dang concealed disbursement of $16,500 to himself for attorney fees on November 24, 2015 and $5,000 to himself for attorney fees on November 16, 2016.  (*Id.* at 14.)  He concealed the disbursements to avoid disbursing

19CV1519-GPC(AHG)

$78,500 within a reasonable time to Dang.  (*Id.*)  Pontier claims he first learned of Dang's disbursements to himself around March 20, 2020 when he received Chase Bank records. (*Id.* at 17.)  While Pontier's argument is not entirely clear, he does not dispute he signed a contingency fee agreement where Dang was entitled to 33% of any settlement funds. Moreover, Pontier was aware that he had not received disbursement of both settlement funds as early as August 19, 2016 when Pontier demanded the full settlement funds. (Dkt. No. 9, Counterclaim at 6-8.)  Therefore, despite his allegation that he first learned of Dang's disbursements of attorney fee on March 20, 2020 from records received from Chase Bank, the record reveals that Pontier was aware of the facts supporting his alleged conversion claim back in 2016 and cannot rely on the tolling provision under section 340.6(a)(3).

Dang, alternatively, argues that the conversion claims fail on the merits because Pontier has failed to identify how he could be entitled to the $100,000 settlement checks based on the attorney fee and medical lien provisions in the contingency fee agreement. (Dkt. No. 118-1 at 15-16.)  Pontier does not address this argument.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages . . . ."  *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014) (internal quotations and citations omitted).

The evidence in the record does not support Pontier's conversion claim.  First, Pontier does not dispute that he signed the contingency fee agreement dated April 10, 2012 which provides for attorney fee of 33% of a settlement made after a lawsuit has been filed.  (Dkt. No. 74, D's Am. MSJ, Ex. G at 30-31.)  Pontier appears to have acknowledged that attorney fees would be deduced from the settlement funds in his letters to Dang on August 19, 2016 as he stated the Dang promised he would receive between $28,000 to $30,000 out of the $50,000 within 30 days as well in his amended motion for summary judgment on the breach of contract claims where he seeks $33,500

19

from the Farmers settlement fund and $45,000 from the GEICO settlement fund.  (Dkt. No. 9 at 6; Dkt. No. 74 at 10-13.)  Second, the contingency fee agreement includes a medical lien provision that any remaining balances will be deducted from the amount recovered and paid directly to the unpaid medical creditor.  (Dkt. No. 74, D's Am. MSJ, Ex. G at 30.)  Pontier has provided no evidentiary support that he has any ownership right to the entire $100,000 settlement funds.  The record shows that Dang disbursed only the amount of attorney fee pursuant to the contingency fee agreement.  No other monies were taken for his benefit.  Dang has demonstrated that Pontier failed to make a showing to support the elements of a conversion claim.  *See Celotex Corp*., 477 U.S. at 322-23.  Thus, the Court GRANTS Dang's motion for summary judgment on the conversion claims.

**D.     Second and Eighth Counterclaims - Fraud**

Dang recognizes the exception for actual fraud under section 340.6 and argues that the fraud claims are barred by the three-year statute of limitation under California Code of Civil Procedure section 338 because Pontier knew of the facts surrounding the alleged fraud in 2016.  (Dkt. No. 118-1 at 17-18.)  Pontier, as with the other counterclaims, claims that the four-year statute of limitations for breach of contract applies.[7]  (Dkt. No. 146 at 3-6.)  Pontier alternatively argues that the statute of limitations should be tolled under section 340.6(a)(3).  (*Id.* at 13-21.)

"A fraud claim against a lawyer is no different from a fraud claim against anyone else."  *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 291 (2004).  The elements to prove fraud are: "(1) representation; (2) falsity; (3) knowledge of falsity; (4)

---

[7] Pontier also argues that the statute of limitation as to his counterclaims should be tolled because Dang filed a prior successive interpleader complaint on August 9, 2018 in Case No. 18cv1869-LAB(BGS) which he voluntarily dismissed and then refiled the interpleader complaint on August 13, 2019, Case No. 19cv1519-GPC(AHG).  However, Pontier does not provide any legal authority supporting his tolling argument.  Pontier was not limited to filing his claims against Dang as a counterclaim to the interpleader complaint.  Pontier could have filed a complaint against Dang independent of the interpleader complaint. Therefore, Pontier's tolling argument is without merit.

intent to deceive; and (5) reliance and resulting damage (causation)." *Id.* (quoting 5 Witkin, Cal. Procedure Pleading, 4th ed. 1997, § 668, p. 123 (1997)).  For a fraud claim, the statute of limitations is three years and is "not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Cal. Civ. Proc. Code § 338(d).  "This section effectively codifies the delayed discovery rule in connection with actions for fraud, providing that a cause of action for fraud "is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  *Britton v. Girardi*, 235 Cal. App. 4th 721, 733-734 (2015) (internal quotations and citation omitted).  In order for the discovery rule to delay the accrual of a cause of action in California, a complaint must plead facts to "show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (quoting *McKelvey v. Boeing N. American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)).

The Court notes that Pontier provides no evidence to support the allegations of fraud in the counterclaim.[8]  However, the Court looks at the counterclaim for purposes of analyzing the statute of limitations.  The counterclaim alleges that around August 15, 2015, Dang informed Pontier that he was ill prepared for trial and had no funds to pay expert witnesses or to represent Pontier at trial.  (Dkt. No. 9 at 8.)  Around September 15, 2015, Dang falsely and fraudulently represented that if Pontier gave up going to trial then out of the $50,000 settlement with Farmers, he would receive about $30,000 within 30 days.  (Dkt. No. 9 at 8.)  Dang stated that he would waive his attorney fee to ensure Pontier received $30,000.  (*Id.* at 9.)  Pontier told Dang that he would not accept the out of court settlement if he were to receive less than $30,000.  (*Id.* at 8.)  Prior to signing the

---

[8] The only evidence Pontier provides is his declaration; however, the declaration addresses allegations that according to the contingency fee agreement, the disbursement of the entire $100,000 settlement funds were to be distributed six weeks after initial disbursement.  (Dk.t No. 74 at 36-44.)  These facts are not related to the allegations of fraud in the counterclaim.

September 15, 2015 agreement, Dang also informed Pontier that he had negotiated settlements with medical providers which reduced the amounts to about 10% to 15% of the medical fees owed.  (*Id.* at 9.)  Relying on these representations, Pontier signed the out of court settlement agreement around September 15, 2015.  (*Id.*)  However, the representations were false because Dang entered into a secret agreement with TEOCO to receive $35,000 claim from the $50,000 Farmers settlement amount.  (*Id.*)  Plus, Dang planned to take $16,500 in attorney fees which left the Farmer settlement amount in a negative balance.  (*Id.*)  Then Dang took $1,500 from the GEICO settlement to conceal the negative $1,500 balance from the Farmers settlement.  (*Id.*)  It was not until October 28, 2018 that Dang distributed $35,000 to Defendant TEOCO.  (*Id.*)  Pontier alleges that he was ignorant at the time the misrepresentations were made as to the falsity of the statements and could not in the exercise of reasonable diligence have discovered Dang's secret intentions.  (*Id.*)

First, Pontier has failed to allege in the counterclaim that the discovery rule applies.  Because the counterclaim fails to "show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence," *Fox*, 35 Cal. 4th at 808, the discovery rule does not apply to delay accrual of the fraud counterclaim.

Second, absent the discovery rule, the facts surrounding the fraud are alleged to have occurred around September 15, 2015, when Dang falsely represented that Pontier would get $30,000 of the $50,000 Farmer settlement funds within 30 day; therefore, because the counterclaim was filed on January 15, 2020, the fraud claim is barred by the three-year statute of limitations.

The eighth counterclaim also alleges fraud claiming that Dang received $50,000 from GEICO without returning a signed release.  (Dkt. No. 28 at 15.)  When Dang received the GEICO check, the accompanying letter dated August 4, 2016 stated "[t]he enclosed check is to be held in escrow and is not to be negotiated or distributed until the enclosed release is signed by your clients(s) and return to me."  (Dkt. No. 28 at 15; *id.*,

Ex. C at 9.)  However, Dang deposited the GEICO check on August 12, 2016 without signing and returning the release.  (*Id.*, Ex. B at 8.)  On October 4, 2018, Pontier later confirmed with GEICO that Dang had not returned a signed release.  (*Id.*, Ex. E at 12.)  Then Pontier alleges Dang fraudulently converted funds to his own possession when he withdrew $5,000 from the $50,000 for his personal use noting "attorney fees" on November 15, 2016.  (*Id.* at 15.)  The eighth counterclaim appears to allege a fraudulent conversion claim.  It is not clear how Pontier can allege a fraud claim based on Dang's failure to sign and return the release to GEICO.  To the extent Pontier alleges fraud, he has not alleged that the discovery rule applies to delay the running of the statute of limitations.  Because the counterclaim alleges that the conversion of funds was completed on November 15, 2016, (Dkt. No. 28 at 15), the fraud claim based on conversion is time barred.

Alternatively, Pontier argues that the statute of limitations should be tolled under section 340.6(a)(3) because Dang willfully concealed facts constituting the wrongful act of disbursing $21,500 to himself for attorney fees.  (Dkt. No. 146 at 13-19 (citing Cal. Code Civ. Proc. Code (s) 340.6(a)(3).)  However, because claims of actual fraud are excluded from section 340.6, the tolling provision under that section does not apply.

Accordingly, the Court GRANTS Dang's motion for summary judgment on the second and eighth counterclaims for fraud as time barred.[9]

_____

[9] Dang also argues that because Pontier has failed to allege the fraud claims and any claims grounded in fraud with specificity under Rule 9(b), summary judgment should be granted.  (Dkt. No. 118-1 at 14-15.)  At the pleading stage, Dang did not file a motion to dismiss based on Rule 9(b) and Dang fails to demonstrate that he can later raise the Rule 9(b) arguments on a motion for summary judgment.  *See Doe v. BSA*, 329 F. Supp. 3d 1168, 1189 (D. Idaho 2018) (noting that defendants "did not file any motion attacking the sufficiency of Plaintiffs' pleadings under Rule 9(b). As such, the Court finds this defense is no longer relevant, and shall therefore be stricken.")  *Lancaster v. Kordseimon*, Case No. 1:15-cv-00239-BLW 2016 WL 5662011, at *6 (D. Idaho Sept. 29, 2016) (untimely to allege Rule 9(b) on a Rule 56 motion for summary judgment).  While Rule 9(b) can apply on summary judgment for purposes of demonstrating tolling based on fraudulent concealment, *see Wasco Prods*., 435 F.3d at 991, Dang's Rule 9(b) argument relates to the allegations of fraud claims, not the tolling arguments.

**E.      Third Counterclaim[10] – Breach of Contract**

Both parties move for summary judgment on the breach of contract claim. The counterclaim asserts that Dang breached the contingency fee agreement around August 15, 2015 by declining to provide legal representation at the civil trial scheduled for December 2015, by failing to distribute $50,000 in client funds received in settlement from Farmers around October 15, 2015, by failing to distribute $50,000 in client funds received in settlement from GEICO around August 15, 2016, and on the same date, abandoning Pontier's case.  (Dkt. No. 9, Counterclaim at 11-12.)

Dang argues that the claim is barred by the one-year statute of limitations under section 340.6.  (Dkt. No. 118-1 at 18-19.)  Alternatively, he argues that the claim fails because Pontier cannot allege that any purported breach damaged him.  (*Id.*)  Pontier moves for summary judgment arguing that even if the $50,000 Farmers settlement was lawfully obtained by Dang, he breached the contingency fee agreement by refusing to distribute $33,500 to Pontier on December 4, 2015, six weeks after initial disbursement of the Farmers settlement.  (Dkt. No. 74 at 10-11.)  As to the $50,000 GEICO settlement amount, even if Dang had lawfully obtained the GEICO funds, he breached the agreement by not forwarding $45,000 to Pontier within six weeks of initial disbursement. (*Id.* at 11-12.)

The Court first addresses the statute of limitations argument.  The contention for breach of contract mirrors the conversion claim as they both allege that Dang failed to timely distribute the settlement funds.  In the breach of contract claim, Pontier specifically argues that as to the Famers settlement, December 4, 2015 is the date that Dang breached the contract by failing to forward the funds to Pontier and he suffered losses on that day.  (*Id.* at 11.)  Similarly, Pontier argues that as to the GEICO funds, the

---

[10] Dang asserts there is a ninth counterclaim for breach of contract but does not provide a citation to the counterclaim.  However, the Court is unable to locate a ninth counterclaim for breach of contract. Therefore, the Court only considers the third counterclaim for breach of contract.

19CV1519-GPC(AHG)

breach occurred on December 28, 2016 and he suffered injuries on that date.  (*Id.* at 12-13.)  Therefore, this claim falls under section 340.6.  However, because there is an issue of fact whether the continuous representation tolling provision applies, the Court DENIES Dang's motion for summary judgment as time barred.

Moreover, on the merits, there are issues of fact whether there was a breach of the continency fee agreement.  While the contingency fee agreement provides for the deduction of attorney fee and medical liens from settlement funds, it also provides that disbursement of the remaining balance would be made six weeks after initial disbursement.  (Dkt. No. 74 at 30.)  Pontier provides a declaration asserting that Dang explained the terms of the contract and that he would receive the settlement funds within six weeks.  (Dkt. No. 74, Pontier Decl. ¶¶ 4-7.)  Because both parties have provided material facts that are disputed, the Court DENIES Dang's motion for summary judgment and DENIES Pontier's amended motion for summary judgment on the breach of contract claim.

## F.      Fourth Counterclaim – Legal Malpractice

On the legal practice claim, Dang argues that this claim is barred because Pontier has failed to present any expert testimony as to the standard of care for legal malpractice.[11]  (Dkt. No. 118-1 at 19-20.)  Pontier does not address this argument.

"In a legal malpractice action, expert testimony is required to establish the prevailing standard of skill and learning in the locality and the propriety of particular conduct by the practitioner in particular circumstances, as such standard and skill is not a matter of general knowledge."  *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1165 (S.D. Cal. 2008) (quoting *Lipscomb v. Krause*, 87 Cal. App. 3d

---

[11] On the analysis of the legal malpractice claim, Dang does not specifically address the statute of limitations.  Accordingly, the Court declines to address the issue.  However, even if it did, the same analysis on conversion would apply to this claim as there is a material issue of fact as to when the attorney-client relationship terminated under the continuous representation tolling provision per section 340.6(a)(2).

970, 975 (1978)).  But expert testimony is not required "when the type of conduct required by the particular circumstances is within the knowledge of laymen."  *Id. (*citing *Hutchinson v. United States*, 838 F.2d 390, 392 n.1 (9th Cir. 1988) (exception did not apply as treatment of a kidney stone is clearly not within the common knowledge of laymen).  Here, the parties have not argued and it is not clear whether expert testimony is required in this case.  Moreover, it is not clear whether Pontier has or will retain an expert.  Based on the scheduling order, the parties are currently engaged in expert discovery.  (Dkt. No. 72.)  Accordingly, the Court denies summary judgment based on Dang's argument that Pontier has failed to present expert testimony.

Next, Dang summarily argues that Pontier has failed to submit any evidence of causation between any purported error and damages.  The counterclaim alleges a legal malpractice claim based on Dang's negligence by submitting a premature claim with Pontier's GEICO uninsured motorist coverage relying on California law and not Nevada law where he purchased the policy.  (Dkt. No. 9 at 16-17.)  Pontier claims Dang failed to investigate or determine the policy limits under Nevada law and settled for significantly less than what Pontier was legally entitled to receive under Nevada law.  (*Id.* at 16.)  Moreover, Pontier deposited the $50,000 check, abandoned Pontier's case and disappeared for two and a half years.  Pontier fired Dang and contacted GEICO to challenge the claim and confirmed that Dang had filed for less than allowable under Nevada law and GEICO offered to compensate Pontier an additional $25,000 not to challenge the settlement in court.  (*Id.* at 17.)  Moreover, Pontier's orthopedic surgeon recommended a second surgery around June 2016 but Pontier cancelled it because he could not afford it.  (*Id.*)  The cost of the second surgery would have been eligible for coverage under his GIECO uninsured motorist policy if Dang waited to file the claim until after he had the second surgery.  (*Id.*)  As a result, Pontier has not had his second surgery and has endured spinal pain for more than three years.  (*Id.*)

A legal malpractice claim requires a showing of the following: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession

commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." *Kumaraperu v. Feldsted*, 237 Cal. App. 4th 60, 66 (2015).

On this claim, Dang argues that "Pontier has failed to submit any evidence of a causal connection between any purported error and damages." In response, Pontier has not addressed the merits of his counterclaim and has not provided any evidence to support the legal malpractice claim. Accordingly, the Court GRANTS Dang's motion for summary judgment on this claim.

**G.    Fifth Counterclaims – Medical Fraud**

The fifth counterclaim asserts that Dang, as well as Defendants Kim, Nusbaum and Yoo, committed medical fraud by falsely and fraudulently representing around April 4, 2012 that Pontier should forgo medical treatment in Nevada under his personal health insurance for his spinal injury suffered in the March 2012 car accident and seek medical treatment from Kim, Nusbaum and Yoo under liens in San Diego. (Dkt. No. 9 at 19-22.) After months of ineffective and unnecessary treatments, he was referred to Yoo who declined to perform the surgery under a lien and sought $125,000 to pay for the surgery. (*Id.* at 20.)  Unable to pay $125,000, Pontier then sought treatments in Las Vegas, Nevada and had spinal surgery on March 15, 2015. (*Id.*) The delayed spinal surgery, while he sought treatment in San Diego, caused nerve damage compression and permanently damaged his lower spine. (*Id.*)

In his motion, Dang conflates the arguments for medical fraud and medical malpractice counterclaims arguing (1) that they can only be brought against medical professionals and (2) are also barred by the three year statute of limitations for medical malpractice under California Code of Civil Procedure section 340.5. He argues that because the first surgery occurred on March 15, 2015 and he wanted a second surgery by June 2016, then his claims are barred. (Dkt. No. 118-1 at 20-21. However, while

27

allegations to support medical fraud and medical malpractice are nearly identical, they are distinct claims.

"The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) (internal quotation and citation omitted).  Because Dang fails to provide arguments that relates to the medical fraud claim, the Court DENIES the motion for summary judgment as factually and legally unsupported.

## H.    Sixth Counterclaim – Medical Malpractice

On the sixth counterclaim, Pontier alleges that Defendant Dang is liable to medical malpractice.  (Dk. No. 9 at 23-25.)  Dang argues this claim fails because he is not a medical professional.

"[U]nder California law, a medical malpractice claim can only be brought against a medical professional."  *Johnson v. Lucent Techs., Inc.,* Case No. CV 08-6002 CAS (CTx), 2009 WL 10671937 (C.D. Cal. Jan. 26, 2009) (citing *Avivi v. Centro Medico Urgente Med. Ctr.*, 159 Cal. App. 4th 463, 468 n. 2 (Cal. Ct. App. 2008) (noting elements of medical malpractice claim), *rev'd in part on other grounds by* 653 F.3d 1000 (9th Cir. 2011)).

Here, Dang is not a medical provider or health care professional and Pontier does not argue differently.  Accordingly, the Court GRANTS Dang's motion for summary judgment on the sixth cause of action for medical malpractice.

## I.    Counterclaim Seven – Violation of the FDCPA and/or Rosenthal Act

The counterclaim alleges violations under the Fair Debt Collection Practices Act ("FDCPA") or California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").  (Dkt. No. 28 at 1-2.)  Pontier alleges that by filing the interpleader, Dang is attempting to collect debts by alleging Pontier owes debts to Kim, Nusbaum and Yoo. (*Id.* at 2.)  But because the medical treatments were incurred in 2012, they are time barred

debts.  Therefore, Dang violated the FDCPA by seeking to file an interpleader complaint three years after the statute of limitations had expired.

Dang argues that this claim fails because he is not a debt collector but in fact a fiduciary to the third party medical provider's liens.  (Dkt. No. 118-1 at 21.)  Pontier has not opposed the arguments raised by Dang.

The FDCPA only applies to "debt collectors" whose principal business purpose is to collect debts "or who regularly collects or attempts to collect" debts.  15 U.S.C. § 1692a(6).  The Rosenthal Act defines "debt collectors" to "means any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection."  Cal. Civ. Code § 1788.2(c).  "The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (citing Cal. Civ. Code § 1788.17). "[A]ny conduct by a debt collector which violates the federal FDCPA necessarily violates the California FDCPA [otherwise known as the Rosenthal Act] as well." *Robinson v. Managed Accounts Receivables Corp*., 654 F. Supp. 2d 1051, 1058, 1060 (C.D. Cal. 2009) (citation omitted).

Dang states that he is not a debt collector and his principal purpose of business is as a personal injury attorney, not a debt collector.  (Dkt. No. 118-3, Dang Decl. ¶ 25.) Moreover, Dang's purpose in filing the interpleader action was to disburse disputed funds and not to collect a debt.  (*Id.*)  Plaintiff has not provided any evidence to dispute the fact that Dang is not a debt collector.  Therefore, the record demonstrates that Dang is not a debt collector as defined under the FDCPA and Rosenthal Act; therefore, the FDCPA and the Rosenthall Act do not apply to the allegations against Dang. *See Robinson*, 654 F.Supp.2d at 1058 (one of the requirements for an FDCPA claim is that the defendant be a "debtor collector").  Thus, the Court GRANTS Dang's motion for summary judgment on the FDCPA and/or Rosenthal Act.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Conclusion

Based on the above, the Court GRANTS in part and DENIES Dang's motion for summary judgment on the counterclaims.  Specifically, the Court GRANTS Dang's motion for summary judgment on all counterclaims except the Court DENIES summary judgment on the breach of contract and medical fraud counterclaims.  In addition, the Court DENIES Pontier's amended motion for summary judgment on the breach of contract counterclaim.

IT IS SO ORDERED.

Dated:  December 18, 2020

Hon. Gonzalo P. Curiel
United States District Judge

19CV1519-GPC(AHG)